IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

DERRICK CARTER,

          Defendant.

CRIMINAL ACTION
NO. 18-561-1

**OPINION**

**Slomsky, J.**                                                                                                                            **June 29, 2021**

**I. INTRODUCTION**

On June 11, 2021, Defendant Derrick Carter pled guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count II), and distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)-(C) (Counts III and IV). He is currently detained at the Federal Detention Center ("FDC") in Philadelphia and is awaiting sentencing scheduled for September 22, 2021. He has been in federal custody since December 14, 2018.

Presently before the Court is Defendant's Motion for Release Pending Imposition of Sentence. (Doc. No. 146.) In the Motion, Defendant moves for release pending sentencing pursuant to 18 U.S.C. §§ 3143(a)(2) and 3145(c), relying upon the following grounds which he claims constitute "exceptional circumstances:" (1) he has cooperated with the Government, which he expects will move, in return for his cooperation, for a downward departure under the Federal Sentencing Guidelines; (2) the COVID-19 pandemic has delayed his court proceedings and placed him at an increased risk of severe illness in light of his health conditions; and (3) the significant time he spent in pretrial detention. He also claims he is not a risk of flight or a danger to the community. In its Response (Doc. No. 150), the Government wants the Court to deny the Motion because Defendant's cooperation with the Government is not a sufficient basis to justify release

1

and because he has already contracted COVID-19, recovered, and received the Janssen COVID-19 vaccine.

For reasons that follow, Defendant's Motion (Doc. No. 146) will be denied.

## II. BACKGROUND

On December 6, 2018, a grand jury returned an Indictment (Doc. No. 1) charging Defendant with possession of a firearm by a convicted felon and distribution of cocaine base ("crack"). (See id.) A Superseding Indictment was subsequently filed (Doc. No. 67) charging him with the same offenses.

On December 14, 2018, Defendant appeared before United States Magistrate Judge Richard A. Lloret for an initial appearance. (Doc. No. 13.) Judge Lloret granted the Government's Motion for Temporary Detention. (See id.) On December 26, 2018, Magistrate Judge Carol Sandra Moore Wells arraigned Defendant, granted the Government's Motion for Pretrial Detention, and ordered Defendant to be detained pending further proceedings.[1] (Doc. No. 21.)

On August 22, 2019, Defendant filed a Motion for Reconsideration of the Denial of Pretrial Release (Doc. No. 51), which was effectively a request for review of Judge Wells's decision. On September 19, 2019, the Court denied Defendant's motion, finding that the charged offenses triggered the statutory presumption under 18 U.S.C. § 3142(e)(3)(A) "that no condition or combination of conditions will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community" and Defendant failed to rebut the presumption. (Doc. No. 59 at 5.)

Thereafter, on April 8, 2020, Defendant filed an Emergency Motion for Pretrial Release arguing that the COVID-19 pandemic presented a compelling change in his circumstances given

---

[1] Defendant has since been detained at the Federal Detention Center ("FDC") in Philadelphia.

his medical history.  (See Doc. No. 107 at 2.)  On June 22, 2020, the Court denied Defendant's motion because "his health conditions are not severe enough to warrant an individual exception to pretrial detainment[,]" and "when viewing the seriousness of [his] charges and the weight of evidence against him, his health concerns fail to defeat the statutory presumption that no combination of conditions will reasonably assure his appearance in court or the safety of the community."  (Doc. No. 127 at 16.)  Moreover, Defendant "simply reiterate[d] the same arguments—namely, his longstanding community ties and familial support—advanced in his prior motion for reconsideration of his bail[,]" which the Court found unpersuasive to warrant release on bail.  (Id. at 14.)

On June 11, 2021, Defendant pled guilty to Counts II-IV of the Superseding Indictment, specifically: possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count II), and distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)-(C) (Counts III and IV).  (See Doc. No. 142.)  Defendant's guilty plea was made pursuant to a plea agreement with the Government.  (See Doc. No. 143.)

On June 18, 2021, Defendant filed the instant Motion for Release Pending Imposition of Sentence. (Doc. No. 146.)  In the Motion, Defendant asks the Court to release him pursuant to 18 U.S.C. §§ 3143(a)(2) and 3145(c), pending his upcoming sentencing on September 22, 2021.  (See id. ¶¶ 3-5.)  He argues that: (1) his cooperation and assistance to the Government may lead in return to a downward departure under the Sentencing Guidelines; (2) his health conditions place him at risk of severe COVID-19 illness; and (3) the significant time he spent in pretrial detention all constitute "exceptional reasons" under § 3145(c).  (See id. ¶¶ 20-22, 25, 27.)  He also submits that release is justified under § 3143(a)(2) because he "is not a flight risk[,]" he is "a lifelong resident of Philadelphia with substantial ties to the community[,]" and he "has demonstrated that

he is not a danger to the community by turning a new leaf and cooperating with the Government." (Id. ¶ 21.)

On June 23, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 150.) It asks the Court to deny the Motion because "the fact that [Defendant] cooperated with the government is not a sufficient basis in this case to justify his release[,]" and because he has already contracted COVID-19, recovered, and received the Janssen vaccine—which "makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus." (Id. at 1, 24.) The Government also believes Defendant's "argument that, as a lifelong resident of Philadelphia with substantial ties to the community, he is suitable for release pending his sentencing hearing, is meritless" since he "has raised these same arguments several times[ and] none have been successful." (Id. at 29) (citing Doc. Nos. 51, 57, 107, 120.) Lastly, the Government refutes that Defendant poses no flight risk or danger to the community, pointing to his criminal history, behavior while incarcerated, and nature of the offense to which he just plead guilty as support. (See id. at 8-10.)

### III. DISCUSSION

In Defendant's Motion, he moves for release pending sentencing pursuant to 18 U.S.C. §§ 3143(a) and 3145(c). While the provisions of § 3143(a) will not afford him release pending sentencing, § 3145(c) can do so because that Section permits a court to release a defendant pending sentencing if he does not pose a risk of flight or danger to the community, and if there is an exceptional reason for release. The Court will address each Section in turn.

#### A. 18 U.S.C. § 3143(a)

First, Defendant claims he should be released pursuant to 18 U.S.C. § 3143(a). Defendant acknowledges that given his crimes of conviction in this case, the provisions of § 3143(a)(2) would apply here. The Section provides as follows:

4

> (a)(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of [18 U.S.C. § 3142][2] and is awaiting imposition or execution of sentence be detained unless—
>
>> (A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>>
>>> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; <u>and</u>
>>
>> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

§ 3143(a)(2) (emphasis added). Under this Section, subsections (A) and (B) both must be met in order to justify release pending sentencing.

Here, Defendant has not shown that he can satisfy subsections (A)(i) or (A)(ii) because he has pled guilty and the Government has not recommended that no sentence of imprisonment be imposed. Defendant's assertion that his assistance to the Government satisfies § 3143(a)(2)(A)(ii) "given [that] the Government is filing an 18 U.S.C. §[]3553(e) §5K1.1 for the assistance he has provided" (Doc. No. 146 ¶ 20), is without merit because, as the Government notes in its Response, "even with the filing of a departure motion, Carter still faces the potential for a significant sentence of incarceration." (Doc. No. 150 at 27.)

Since § 3143(a)(2) requires both subsections (A) and (B) be met, and Defendant cannot satisfy subsection (A), the Court need not address whether Defendant can satisfy subsection (B). Accordingly, Defendant is not subject to release under 18 U.S.C. § 3143(a)(2).

---

[2] As noted above, Defendant pled guilty to distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)-(C), which is one of the offenses listed in 18 U.S.C. § 3142(f)(1)(C).

### B. 18 U.S.C. § 3145(c)

Next, Defendant argues that he should be released pursuant to 18 U.S.C. § 3145(c). Section 3145(c) states in relevant part:

> A person subject to detention pursuant to section 3143(a)(2) . . . and [whom a judicial officer finds by clear and convincing evidence is not likely to flee or pose a danger to the safety of any other person or the community if released] . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

§ 3145(c). In other words, the court may release a person who is otherwise mandatorily detained under § 3143(a)(2) if two conditions are satisfied. First, the court must "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." §§ 3143(a)(1), 3145(c). Second, the court must find that "exceptional reasons" justify release. § 3145(c). Section 3145(c) does not define "exceptional reason," nor has the Third Circuit Court of Appeals provided guidance on the definition of the term.[3] This Court, however, is "guided by the decisions of other courts that have defined 'exceptional' as something out of the ordinary that distinguishes the defendant's situation from that of other defendants subject to mandatory presentence detention." United States v. Ortiz, No. 18-134, 2020 WL 1904478, at *14-15 (M.D. Pa. Apr. 17, 2020) (citations omitted). "The test is a flexible one, vesting the court with discretion to determine whether a particular set of circumstances are 'exceptional' based on a fact-intensive inquiry." Id.

---

[3] While the Third Circuit has not defined "exceptional reasons," it has made clear that the mere existence of COVID-19 and the possibility that it may spread to a particular prison does not justify release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release."); United States v. Roeder, 807 F. App'x 157, 160-61 (3d Cir. 2020) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence[.]").

6

Here, as noted above, Defendant has not shown by clear and convincing evidence that he does not pose a risk of flight or a danger to the community. And even though his medical conditions heighten the risk of severe COVID-19 illness, there is no exceptional reason justifying his release in light of the fact that he has already contracted COVID-19, has recovered, and has received the Janssen COVID-19 vaccine.

First, the Court does not find by clear and convincing evidence that Defendant does not pose a flight risk or a danger to the community. Defendant states in his Motion that he is not a flight risk "given the benefit of" the Government's forthcoming motion for a downward departure. (Doc. No. 146 ¶ 21.) "If [he] fails to appear, he is facing a mandatory minimum of five years and likely higher given his guidelines[;]" therefore "[i]t is in [his] interest to appear at sentencing and receive the benefit of the [downward departure] motion." (Id.) He further avers that he "is a lifelong resident of Philadelphia with substantial ties to the community" and "has demonstrated that he is not a danger to the community by turning a new leaf and cooperating with the Government." (Id.)

The Court is not convinced these assertions are clear and convincing evidence. To begin with, the Court has twice denied Defendant's requests for pretrial release. On September 19, 2019, Defendant's Motion for Reconsideration of the Denial of Pretrial Release (Doc. No. 51) was denied because he failed to rebut the statutory presumption under 18 U.S.C. § 3142(e)(3)(A) "that no condition or combination of conditions will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." (Doc. No. 59 at 5.) Thereafter, on June 22, 2020, Defendant's Emergency Motion for Pretrial Release (Doc. No. 107) was denied. (See Doc. No. 127.)

In denying the latter motion, the Court explained that Defendant's "health conditions

7

[were] not severe enough to warrant an individual exception to pretrial detainment[,]" and "when viewing the seriousness of [his] charges and the weight of evidence against him, his health concerns fail to defeat the statutory presumption that no combination of conditions will reasonably assure his appearance in court or the safety of the community." (Id. at 16.) Notably, the Court explained that the motion "simply reiterate[d] the same arguments—namely, his longstanding community ties and familial support—advanced in his prior motion for reconsideration of his bail. Those factors were unpersuasive then and they remain unpersuasive[.]" (Id. at 14.) Likewise, the same arguments are presented in the instant Motion and still remain unpersuasive.

Moreover, Defendant's criminal history and disciplinary infractions while at FDC undermine his assertion that he is not a flight risk or a danger to the community. In its Response to the instant Motion, the Government notes that Defendant's "criminal history consists of violent offenses, including aggravated assault, simple assault, reckless endangerment, and terroristic threats[,]" and "at the time [he] committed the instant offense, he was serving a sentence of probation[.]" (Doc. No. 150 at 9.) While detained at FDC, Defendant has received disciplinary infractions for "fighting with another inmate[]; . . . being in unauthorized area[]; . . . [and] []refusing drug/alcohol test[]." (Id. at 28 n.6; see also id., Ex. B.)

Indeed, as the Court reasoned in its June 22, 2020 Opinion denying Defendant's Emergency Motion for Pretrial Release:

> Defendant's personal history and characteristics also do not support his release. His criminal record includes a felony conviction for aggravated assault, for which he was sentenced to 11 to 23 months' imprisonment, and other misdemeanor convictions. (Doc. No. 52 at 13.) In addition, Defendant has been found in contempt of court three times, and his arrest for the conduct charged in this case occurred while he was serving a probationary sentence for a state offense. (Id. at 13, 15). In light of these countervailing factors, Defendant's longstanding community ties and family support do not overcome the statutory presumption he faces. Thus, the original grounds for Defendant's pretrial detention support his continued incarceration pending trial, given that there are no conditions or

combination of conditions that will assure the safety of the community or his appearance at trial.

(Id. at 15.) "[G]iven [Defendant's] proven history of disobeying court orders and violating the terms and conditions of probation by continuing to engage in serious criminal activity, it is reasonable to assume that [his] release pending sentencing will endanger the community and present an unacceptably high risk for flight." (Doc. No. 150 at 9-10.)[4]

Furthermore, Defendant has not clearly shown that there are exceptional reasons justifying his release. While Defendant states that he "suffers from obesity, Type II Diabetes, Seizure Disorder, Asthma, and Sickle Cell Trait (Heterozygous)" which "make him particularly vulnerable to COVID-19[,]" (Doc. No. 146 ¶ 26), the Government points out that Defendant contracted COVID-19 in January, has "fully recovered," and he has received the Janssen COVID-19 vaccine on May 19. (Doc. No. 150 at 13, 16; see also id., Ex. A at 14, 125.) The Government cites an overwhelming number of cases[5] with similar circumstances, where courts found that the risk of COVID-19 is mitigated when a vaccination is administered because it "provide[s] effective 'self-

---

[4]  The Court also is persuaded by the following argument the Government made in its Response:

> If this Court were to release [Defendant], there is no guarantee that [he] will not flee the district now that he has admitted his guilt to the charges in the superseding information and is certain to face punishment, notwithstanding his cooperation plea agreement. For this reason, electronic or GPS monitoring will not be effective in preventing [him] from fleeing or continuing to engage in his favorite means of obtaining cash – drug trafficking and selling guns. Nor is there any guarantee that GPS with house arrest will prevent [him] from leaving his residence for that purpose or prevent others from coming to [his] residence to engage in drug trafficking. [He] could just as easily sell drugs from his home while on house arrest or electronic monitoring as he can by leaving his residence. GPS or electronic monitoring can neither detect nor prevent gun sales or drug trafficking by Carter from his residence.

(Doc. No. 150 at 9.)

[5]  (See Doc. No. 150 at 13-15, 17-25.)

care' against the virus[.]"⁶ (Doc. No. 150 at 17.) Lastly, Defendant argues that his cooperation and assistance with the Government "meets [the] additional element of 'exceptional reasons' . . . of 18 U.S.C. 3145 (c)" because his "information and operational assistance resulted in" apprehension of an individual "wanted for murder and for absconding from probation." (Doc. No. 146 ¶ 22.) But in light of all above facts, this argument is not an "exceptional reason" justifying Defendant's release.⁷

In sum, Defendant will not be released pursuant to 18 U.S.C. § 3145(c) because the Court cannot find by clear and convincing evidence that Defendant is not a flight risk or a danger to the community, and because Defendant has not clearly shown that there are exceptional reasons justifying his release.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Release Pending Imposition of Sentence (Doc. No. 146) will be denied. An appropriate Order follows.

---

6   In addition, to rebut Defendant's assertion that "COVID-19 is especially dangerous to those with respiratory conditions[,]" (Doc. No. 146 ¶ 27), the Government notes that Defendant's "asthma seems to be well-managed at the FDC with an Albuterol inhaler[, Defendant] does not claim otherwise[,]" and "[i]n any event, numerous courts have denied release to inmates with asthma controlled with medication." (Doc. No. 150 at 25.) The Government then cites a large number of cases in support of its contention. (See id. at 25-26.)

7   Defendant's assertion that his prolonged pretrial detention constitutes an "exceptional reason" under 18 U.S.C. § 3145(c) is equally unpersuasive when considering that he waived his right to a speedy trial on three occasions just prior to the COVID-19 pandemic. (See Doc. Nos. 25, 37, 44.)